The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning. The case for argument this morning is 20-135 In Re Apple. Ms. Boswick, whenever you're ready. Thank you, Your Honor. May it please the Court. This case can be resolved based on just two critical errors, each of which is clear from the face of the District Court's opinion. First, the District Court's reliance on its progress in the case by the time it issued its transfer opinion and, in particular, the fact that it had set a trial date. That was the basis for the only factors the Court weighed against transfer, the practical problems factor and court congestion. And it is a clear abuse of discretion to rely on the perceived ability to more quickly schedule a trial, as this Court just recently held in Adobe, or to rely on things that happened after the case was filed and, indeed, after the transfer decision was announced, as this Court held just last week in the Hewlett-Packard case. Second, but for a series of clear legal errors, the Court would have treated the critical cost-to-willing-witnesses factor as pro-transfer instead of neutral. The Court agreed that Apple's witnesses favored transfer, and it recognized that Umilok's witnesses are also in California. It discounted their convenience because they are willing to travel, even though this factor presumes willingness and still requires a consideration of convenience. It further minimized the convenience of all party witnesses doubling down on a flawed legal approach that this Court had just reminded this district court in Apple's STC-UNM case was a, quote, discordant proposition. Counsel, this is Judge Moore. What is our standard of review in this case? The Court looks for a clear abuse of discretion. And what does that mean? So the Fifth Circuit applies what's known as the FISER factors. These are set out in the Volkswagen decisions. And what it says is it can be, for example, a failure to consider the relevant factors or a consideration of irrelevant factors. It also can be a clear abuse of discretion. So we know that a clear abuse of discretion can be something other than simply failing to consider all the factors. Beyond that, the Fifth Circuit has not provided extensive guidance, but what it said in the Horseshoe case is that the Court can only apply the FISER standard by reviewing carefully the circumstances presented to and the decision-making process used by the district court. And so this Court can look, for example, a clear legal error, a clear misapplication of law to fact, or a clear misapprehension of fact, which is why I focused on these two errors that are both clear simply by looking at the district court's opinion. So do you – is your view that if there was a clear legal error, like the one that you cited with focusing on events that took place after the transfer motion was filed, you think that is a sufficient basis for us to grant mandamus just because there happens to be a clear legal error in the analysis in one place? So that is, to be clear, not what I am saying happened here. We think there are multiple clear legal errors as well as clear misapprehensions of the fact. What I'm saying is that these two clear legal errors that I'm focused on are sufficient to grant mandamus because – but for those errors, one would have to conclude that the Northern District of California was the clearly more convenient forum because, again, the only factors weighing against transfer, dependent on this first legal error of considering the setting of a trial date and the progress in the case after the transfer motion. Well, you said the only things that weighed against transfer, but what did the district court find weighed in favor of transfer? Right. The district court found that the access to sources of proof factor weighed in favor of transfer. It did so slightly because we believe it made a clear error in the analysis of the location of documents. If everything else were neutral and there is one factor that favors transfer, that is still a case that ought to be transferred. Maybe it's a case that ought to be transferred, but is it a case that ought to be mandamus? That's the question. The question isn't under a de novo review if everything is neutral and one favor weighs slightly, should it be transferred? The question is should an appellate court step in and mandamus a case in those circumstances? Certainly. I think it could because the analysis involved a clear abuse of discretion, but the court doesn't have to go that far because there are other clear abuses of discretion that were dispositive. That's why I focus on the cost to willing witnesses factor, which this court has recognized is the most important factor in the analysis. The district court treated that as neutral here, but it did so only through this series of clear legal errors. But for those, the cost to willing witnesses factor would have had to weigh in favor of transfer. So if you simply look at that, then you have one factor weighing slightly in favor of transfer, one critical factor weighing in favor of transfer, and nothing weighing against, and that is certainly a case for mandamus, and this court has done so several times. How did the district court err in the cost of attendance for willing witnesses? Certainly. I want to be clear we have disputes here about which witnesses might be relevant, but even without getting into those disputes, the district court's legal errors are enough to show a clear abuse of discretion. So as I said, the district court recognized that the location of Apple's witnesses favored transfer. It recognized a number of Uniloc witnesses and Fortress witnesses in California, including in the Northern District. It discounted those witnesses first by saying that Uniloc had witnesses in or near both forums who were willing to travel, but this factor presumes that a witness is willing to appear. The question remains the cost to them of doing so, and those costs must be considered even for plaintiff's witnesses. The district court then further discounted what was at that time a slight pro-transfer weighting by saying that all party witnesses, Apple's and Uniloc's, should be given little weight. That was just one week after this court called it a discordant proposition to take this approach. The district court stood by it. There is no support for that proposition, and the Fifth Circuit's decision in Volkswagen II, this court's decision in Genentech, and others make clear that it is improper. So at that point you have the district court agreeing that the party witnesses weighed in favor of transfer but saying it was going to give that little weight. It then committed the third error to make this factor neutral, and that was relying on prospective witnesses who are outside of both forums, the inventors and the prosecuting attorney who are based in New York, as well as the only possible Uniloc witnesses that the district court could have been referring to when it said there were such witnesses in or near the Western District of Texas. That is Uniloc's two administrative employees in its Tyler, Texas office in the Eastern District. Relying on all of these witnesses was contrary to this court's repeated holdings, most recently last week in the Hewlett-Packard decision, that such witnesses are not relevant to the analysis because they're going to have to travel and incur costs regardless. Counsel, doesn't the 100-mile rule, which comes out of the Fifth Circuit and the Volkswagen case, indicate that further travel could incur further costs? Your Honor, the Fifth Circuit's 100-mile rule applies when the distance between an existing venue for trial and a proposed venue is more than 100 miles. It's a recognition that, for example, the difference between the Austin division and the Waco division might not be so significant, but when your two potential venues are very far apart and you have witnesses who have to travel to one forum but not to the other, their convenience matters a great deal. When witnesses are going to... Where does the Fifth Circuit say that its 100-mile rule only applies to cases where you have somebody within 100 miles, one forum within 100 miles and another forum outside of 100 miles? Where has the Fifth Circuit said that? The Fifth Circuit has not said that directly. What I was quoting in the articulation of the rule is from the Volkswagen 1 case at page 204. And what this court has said many times in applying the Fifth Circuit's law is that when witnesses are going to have to travel for trial regardless, that additional distance is not part of the analysis. The court said that in the Nintendo case from 2009, in Genentech, in Toyota, in Julie Packard... Now, why? Didn't you tell me, counsel, that this factor turns on the cost for the travel? Certainly for me to travel from D.C. to New York, which is more than 100 miles away, costs a lot less than for me to travel from D.C. to California. So wouldn't that cost be something relevant to the analysis since you stressed with me it's not their willingness but rather their cost of attendance? It's not simply the financial cost, Your Honor. What the Fifth Circuit has explained... But isn't the financial cost one of the factors? Doesn't it express itself like that? Excuse me. It is certainly one of the factors. But the focus of the 100-mile rule is on the fact that... So why would it be unreasonable, counsel, why would it be unreasonable, completely warranting of mandamus, a clear abuse of discretion, for the district court to conclude that it would cost more for witnesses to travel from New York to California than it would from New York to Texas? The district court did not make that determination. Would it be unreasonable, counsel? I think it certainly would have without any evidence in the record that that is so. We're talking about the difference between travel from New York to either Texas, Waco, Texas, or to Northern California. Certainly that trip, regardless, is going to involve plane travel, hotel stays multiple days away from work and family, which is exactly what the Fifth Circuit's 100-mile rule focuses on. The fact that the plane ride each way might be a bit shorter is no reason to weigh the location against transfer. I recognize that I missed my rebuttal time. Yes. We'll save your rebuttal, and let's hear from Mr. Hurte. Thank you. Thank you, Your Honor. I would like to start with Judge Moore's questions about the 100-mile rule. And those questions are absolutely right, that under the Fifth Circuit's Volkswagen case, the 100-mile rule applies whether you have witnesses inside the forum or outside the forum. And, in fact, in this court's first mandamus decision, the NRATS Tech case, the court found that the district court erred by failing to apply the 100-mile rule to witnesses located in Canada, Michigan, and other parts of Ohio that were different than where the court was going to transfer the case to the Southern District of Ohio, which was the transferee forum. There's no precedent that holds otherwise in this court. The Toyota case the counsel mentioned and the subsequent cases are about when there's no connection to the venue that the plane is filed in, when there's no witnesses, no presence, no documents, no proof in the file. I'm sorry. Yes, Your Honor. Apologize. This is Judge Crouse. Let me just interrupt you and ask you a little about that. My understanding, one, is that the district court concluded with regard to third-party witnesses that this was a significant fact that weighed against transfer. When we look back at Volkswagen, and now we have Genentech, which is a precedential opinion from our court, which suggests that it's a slight inconvenience where the distance is different, they talk about a whole bunch of factors. One might be the time and travel, and, as you know, the Volkswagen case talked about 30 minutes versus 6 hours. But they also talked about having to have an overnight stay and be away from work and so forth. So in this circumstance, the difference between California and Texas, what in our precedent says that the district court was correct in saying that it was a significant fact that weighed against transfer? Sure, Your Honor. I would say it comes from the Volkswagen case itself where the distance and the convenience is measured. I'm sorry. The convenience to the witness is proportional to the distance to be traveled. And so that precedent... Well, it's a factor. In Genentech, though, we said that they specifically... In Genentech, we specifically held that witnesses coming from Europe, Iowa, and the East Coast would only be slightly more inconvenienced by having to travel to California than to Texas, which seems kind of a close parallel to what we're looking at here, right? I think it's a little different in the sense that when you're... Most of the witnesses, as I recall, Genentech, that were relevant were from Europe. And that's like this court's HP decision where the witness from last week... where the witnesses would be coming from Asia. And when you get to that point, you're now comparing two things that are relatively close together. A flight from Europe to California versus Europe to Texas is not a significant, significant difference. Here, all we have is... I'll get back to that. Yes, Your Honor. My reflection, though, is that Genentech had Europe, Iowa, and the East Coast, but I can't differentiate now on the numbers coming from Europe. I will take a look at that. But go ahead. That's correct. It was all three of those locations. But we don't have anything approaching an international case in this case. And we need to remember in the court credited, and Apple hasn't challenged, Judge Albright's ruling that the inventors are some of the most, if not the most, important third-party witnesses in patent cases. And so Apple references party witnesses who, under the Fifth Circuit, are presumed that the court... are presumed to have... whose convenience is not as paramount as third parties who aren't interested in the dispute. And these were the key third parties, and they are further from Texas than California. But unlike Toyota and these other decisions, the district court decision doesn't hinge on that. There's significant proof that Apple didn't mention either this morning or really in front of the district court of Apple's and other third parties that are in the Western District of Texas. And so Apple, one of their contract manufacturers, makes the accused... one of the accused products in Austin. We found out recently that even though Apple has characterized that as just a manufacturer just tightening the screws, that that company, Flextronics, actually loads in the accused software in this case. Apple itself has technical witnesses who deal with delivering the app updates, which is covered by allegations in our infringement contentions. And Judge Albright actually... Yes, Your Honor. I thought Judge Albright, with regard to Flextronics, I thought he even expressed some doubt about the company's relevance in this case, saying that their documents may be duplicative and that they're unsure of the relevance of information that the witnesses could provide. These are quotes from the judge's order. Am I missing that? No, you are not. And that was... I mean, you have to... We have to remember where we're at in the proceedings. At this point, Judge Albright has assertions from Apple that Flextronics isn't relevant and has statements and evidence from Unilock that Flextronics is. And the record is borne out that Flextronics may be a witness in trial because Apple has not produced a lot of the Flextronics-related materials so the predicate of that assumption hasn't borne out to be true. Are we relying on something that occurred since the order? Are we relying on different and new evidence that's in the record now that wasn't in the record before? I'm just a little unclear. No, it's evidence that was in the record and the court credited our position about Flextronics and subsequent evidence has borne that to be correct. And the court was within its... Yes? I'm sorry to interrupt, but your time is running out and I really want to get you to respond at least to one point made by your counsel and an important point in this case, which is the district court's reliance on the work he had done from the time of the hearing to the time of his decision, the Markman ruling, the claim construction, the discovery orders, et cetera. Are you defending the use of that and the reliance of that to bolster the district court's view that he should not transfer the case? I do believe on mandamus review it is not clear warrant in mandamus for a couple of reasons. Under the EMC case, even though the situation is as the suit existed, that decision says things that are reasonably foreseeable down the line the court can consider. And the court's trial date and Markman schedule certainly are things that were known when this case was filed and were facts or at least reasonably foreseeable facts at that time. But importantly for mandamus, even if there is an error, the district court's decision, unlike HP and Adobe, does not hinge on either its trial date or the Markman work. There's a significant connection to this district. There's also a connection to California, which the judge weighed and found it neutral. But Apple's burden is to show that it's clearly more convenient at the district court. And its burden up here is to show that there was a clear abuse of discretion warranting mandamus. And on the credit in the Markman work, Apple didn't raise that in its petition, didn't argue it in front of the district court judge with regard to the... Wait a minute, what's the timing of that? I mean, when they initially filed their petition, they didn't know that the district court was going to rely on that, right? I don't know if Apple knew that or not. That goes back to... My understanding of the timing is there was the hearing, the judge indicated how he was going to rule and that a written opinion would be forthcoming. And then in the five-week interim between the hearing and the actual issuance of the opinion in which he relied on what had been undertaken and happened during that interim five- or six-week period. Am I remembering that correctly? That sequence of events is correct. And this underscores, you know, our view of why Apple should have waited for the court's order to issue. Apple's petition frames the points of error, and it didn't mention this as a point of error. Certainly, at the time of the hearing, the parties were on the verge of the Markman hearing and had already had preliminary constructions, and there, I believe, was an issue about judicial efficiency and economy and what works happened in these other northern district of California cases that the judge found were not sufficiently related versus our case. But it's something that just procedurally is not in front of the court right now. And if this is an issue, I think the... One, it's not a big enough issue to warrant mandamus, where there's a clear abuse of discretion in light of all the other evidence in the record about Apple's presence in Austin. But also, there's just the basic mandamus rule about having to show a clear and undisputable right, and given that both the Adobe case, which references the trial date, and the HP case didn't issue until recently weren't things that Apple raised in front of the district court or properly on appeal, the resolution wouldn't be to grant the petition. It would be to either deny the petition and let Apple raise this through the normal course after judgment... Can I just ask you, Mr. Hurton? I know you're... We've seen a lot of you, and I know you have significant experience in the litigation field. So I just want to ask you, how long should Apple have waited? If you were in their position, for example, I mean, he ultimately issued his order five weeks or six weeks down the road, but he hadn't told anybody, this is the date I'm going to issue it, right? So what if his order had not issued six weeks out? What if it had been eight weeks or ten weeks? Is there some timeframe you can give me where you think, in the absence of a written order and the case proceeding, Apple would have been within, what you think, our correct right to proceed with filing a mandamus? Sure. I think Apple had a number of other options. As a general matter, I would think that Apple could have waited at least four to six months, given the status of the case. We had just started discovery. The case wasn't nearing trial. There wasn't any work we were doing in the Western District case that wouldn't carry over with the case if it got transferred. So we weren't on the verge of any real undoable prejudice. But Apple also had other options. I mean, they moved to stay in front of the district court. He denied that. They could have brought that petition and asked this court to stay the district court proceedings while the transfer order issued. They didn't do that. They could have filed a petition up here, as parties have done in the past, requesting the court to issue a formal opinion and stay in proceedings in the interim. That, I think, was one of the Nintendo mandamuses. They had other options where the regular process could have been followed and the petition that Apple ultimately filed on the transfer issue would have joined issue with what the court actually held in the order. Counsel, a lot of... This is Judge Moore. A lot of your argument directed, especially both in your reply and your cert reply, was to the fact... I mean, your cert reply, I think the word waiver appears something like 27 separate times. So a lot of your argument has been directed to the fact that you believe by jumping the gun, which was a litigation choice on Apple's part, you know, and they've got to live and die by it, by jumping the gun and filing mandamus prior to the ruling, they have waived anything not raised in their petition. How are you prejudiced, if we conclude otherwise, if we go ahead and consider those arguments that were not in the petition? How are you prejudiced? Well, I would say we would have been... The main prejudice was process and procedural. And so until we filed our motion for leave for a cert reply, the last word would have been Apple's attacks on Judge Albright's order for the first time that we would have seen. Apple makes the point that, well, our response addressed Judge Albright's order, but we don't frame the appeal. Apple frames the appeal. They pick the points of error, and we respond and say, that was an error, or it's not clear enough error to warrant mandamus, or the like. It's not our position in the very first brief to say, here's why the judge is right when Apple hasn't addressed the actual order. And so that's the process prejudice that we initially would have faced. And Apple opposed our cert reply on the basis that it would be improper, and the court hasn't ruled on that motion, and so I'm not aware if that's a live issue or not. And the other prejudice is, in the cert reply, we have a limited amount of briefing to address all of this. And then there's the basic overall process point that we're here on a request for extraordinary relief to show a clear abuse of discretion. Counsel, let's go back for a sec. You had wanted to finish a question about remedy. I believe where you were going, and you can tell me if I'm wrong, is you were talking about, in light of Adobe and HP, both of which were issued after the district court's decision, you were saying that even if we perceived there to be errors in his analysis, the proper remedy you said wouldn't be to actually order transfer, it would be, and then you got interrupted. Can you finish what you were trying to say? What would the proper remedy be in your view? Would it be to send it back for him to consider the transfer in light of those new decisions? Yes, Your Honor, that's, I think, the most generous remedy that would be available. I mean, in both, I believe, Dropbox and Adobe, this issue of the trial date, as well in HP, the issue of crediting the work the court had done had actually been raised, and our view is those issues were not raised. But all of that aside, I think the proper remedy, assuming this is an error, that could affect the actual outcome of the transfer decision, the remedy is what happened in this court's Dropbox opinion, which is to send it back to the district court to actually make these findings and weigh these factors in the first instance, which is the ultimate discretionary decision, and then review that decision if necessary. And so that, I think, is the most that Apple would be entitled to under these errors that flow from Adobe and HP is a remand to the court to consider another motion to transfer. I heard the noise, so unless the court has any further questions. You know, let me ask Michael, because I'm having a hard time hearing the bell. Did the bell actually go off? Yes, Your Honor. Okay. Well, thank you for hearing that, Mr. Hurt. Thank you very much. Let's hear from Ms. Foswick for her remaining time. Thank you, Your Honor. I want to make a few quick points to correct some statements by my opposing counsel, but then I do want to make sure that we get back to the big picture here. First, as to Flextronics, Apple has produced all of the information related to Flextronics that Unilock has requested, and notably Unilock has not attempted to take any discovery from Flextronics. Counsel, is it true that Flextronics is located within the district? Yes, it is. Is it also true that Flextronics manufactures one of the accused products? Yes, it is, and it is also true that the district court knew that one of the things Flextronics does is load the operating system onto that one product. That's at Appendix 271. So, Flextronics loads the software onto the product. It manufactures the product, and this is the accused product. Is it Mac Pro? Am I remembering it right? The Mac Pro computer, which is one of the many accused products throughout. And then, is it also correct that Apple has an 8,000-person plant in the Western District of Texas, which has engineers and other people in it that Unilock has said might be relevant for the litigation? It is correct that Apple has a campus with roughly 8,000 employees in Austin and that Unilock has suggested that some of those folks might be relevant. The court doesn't need to look behind that because even accepting that, the district court credited that. Counsel, you cited in your brief to us, you really focused hard, and you cited a lot of ED Texas cases that we've had in front of us, and you said that Judge Albright should have transferred this like so many other judges have done in the past or like we've ordered other judges to do. But most of those other cases that you were referring to were ED Texas cases. And I guess, for me, a really big difference seems to be that Apple is, if not the largest, one of the largest employers in the Western District of Texas. Doesn't that suggest some pretty strong local interest in having litigation decided locally? It does not, Your Honor, because the local interest is to this case. And I want to be clear that there are also several... Counsel, but the accused product is made in the district. So, I mean, if you all, if an injunction is issued and you can't sell that product anymore, then wouldn't that really be a problem? Wouldn't the local interest be impacted? Couldn't some of those engineers either in your Austin campus or your Flextronic manufacturer be put out of business? I mean, wouldn't people lose their jobs? That is not the kind of local interest that this court has previously credited. Judge Yackel, in the Western District of Texas, has also transferred several of these related cases. What is the local interest then? If I have a local interest wrong, what is the local interest? The local interest is about the accused technology. To be clear, the district court here found the local... It's about the technology itself? It's not about the actual interest of the community or the people within the district? How can the technology have a local interest? I don't even think I follow you. No, I did not mean to say that. It is about the people who created the accused technology, and those people are indisputably in Cupertino. This is a case that accuses Apple software. It's about the people who created the technology? You're telling me that when a district court analyzes the local interest that will be impacted by the case taking place in Texas versus California, it's only the people who created the technology he looks to? Gosh, aren't those the inventors in New York? The inventors are relevant if they are located in one of the two forums. They are not here. I guess I'm wondering about understanding who you think the local interest is or what it is. Excuse me. It's the engineers who are in the Northern District of California. But not the ones in Austin? Not the 8,000 in Austin? Those aren't relevant? Because they are not working on the relevant technology. Even though all the electronics ones are? And how do you know they're not working on the relevant technology? It was Apple's burden to establish that. I saw no evidence presented in this record that none of the 8,000 engineers in the Austin campus are working on this technology. Did Apple present evidence that I missed? It did, Your Honor. We have a sworn statement, several sworn statements from Mr. James as well as the two folks from Austin who were deposed and it says exactly that. Okay. Well, we heard the buzzer, so I guess you probably didn't get a chance for a few of your points. But we thank both sides and the case is submitted. Thank you for your time. That concludes our proceedings for this morning. The Honorable Court is adjourned from day to day.